1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD RUNQUIST,

11              Petitioner,                No. CIV S-05-2614 GEB EFB P

12        vs.

13   RANDY GROUNDS[1],

14              Respondent.               FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  He challenges a sentence imposed on him by the Tehama

18   County Superior Court following his plea of guilty to robbery in violation of California Penal

19   Code § 211.  He seeks relief on the grounds that:

20        (1)    his plea was involuntary, unknowing, and unlawfully induced;

21        (2)    the state breached the terms of the plea agreement;

22        (3)    the trial court erroneously denied his motion to withdraw the plea; and

23

24   _____

25        [1] Randy Grounds, warden of the facility where petitioner is currently located, is hereby
     substituted as respondent.  *See* Rule 2(a), Rules Governing § 2254 Proceedings; Fed. R. Civ. P.
26   25(d).

1     (4)     the trial court deprived petitioner of his right to have certain factual

2             findings used to determine his sentence found by a jury.

3   Upon careful consideration of the record and the applicable law, the undersigned recommends

4   that petitioner's application for habeas corpus relief be denied.

5                                    BACKGROUND

6           On August 2, 2001, petitioner was charged in a two-count indictment with violating

7   California Penal Code §§ 211 (second-degree robbery) and 487(a) (grand theft), stemming from

8   the robbery of the Tehama Bank on June 30, 1999.  Doc. No. 17 of Docs. Lodged In Supp. of

9   Resp.'s Answer ("Lodg. Doc."), Clerk's Transcript (hereinafter "CT") at 2-4.  The indictment

10  included special, sentence-enhancing allegations for each count, charging petitioner with two

11  prior strikes under California's "Three Strikes Law" (California Penal Code §§ 667.5(b)-(i) and

12  1170.12(a)-(d)) and with two prior violent felonies (California Penal Code § 667.5(a)).  CT at 2-

13  4.  On September 23, 2002, petitioner pleaded guilty to the charge of second-degree robbery,

14  contained in Count I of the indictment.  Lodg. Doc. 18, Reporter's Transcript (hereinafter "RT")

15  at 121-26; CT at 449-52.  The written plea agreement signed by petitioner mentioned only the

16  charges of second-degree robbery and the charges contained in Count II of the indictment (which

17  included the grand theft and related enhancement allegations), indicating that petitioner was

18  pleading guilty to the former in exchange for the dismissal of the latter.  CT 449-50.  It did not

19  include any information regarding the special allegations alleged in connection with the second-

20  degree robbery in Count I.[2]  *Id.*  At the plea colloquy, petitioner's counsel informed the court that

21  the parties had agreed that a court trial would be had on the special allegations.  RT 121; CT

22

---

23          [2] The form agreement stated, "I am charged with the offense(s) of:  211 PC."  CT 449.  It
    further provided, "I understand that the maximum sentence for the offense(s) to which I am

24  pleading guilty is/are: 5 yrs. prison."  *Id.*  The agreement continued, "I affirm that my attorney
    has explained all of the rights set forth above and I understand them, and, having all of them in

25  mind, I freely and voluntarily enter my plea of guilty to the charge(s) of:  211 P.C."  CT 450.
    The agreement further provided, "The following plea bargain is a part of this plea:  Dismiss

26  Count II."  *Id.*

451-52.

Petitioner was sentenced on October 24, 2002 to a state prison term of twenty-five years-to-life under the Three Strikes Law following a court trial on the special allegations.  CT at 509-10.  The state trial court found true all enhancement allegations, but struck the 3-year enhancement called for by § 667.5(a).  RT at 147, 157-58.  Because it found that petitioner had committed two prior strikes under the Three Strikes Law, the court sentenced petitioner to 25 years-to-life in prison.  RT at 147, 153.

On petitioner's direct appeal, the California Court of Appeal provided the last reasoned decision on petitioner's claim that the state trial court breached the plea agreement by imposing the 25-to-life sentence.  *People v. Runquist*, No. C042584, 2004 Cal. App. Unpub. LEXIS 4754, *7-12 (Cal. Ct. App. May 18, 2004).  The state appellate court made the following factual findings relevant to the instant petition and entitled to deference under 28 U.S.C. § 2254(d)(2), as the court finds them reasonable in light of the record (*Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004); *see Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)):

> Defendant . . . moved to represent himself, and the trial court conducted a *Faretta* canvass on August 20, 2001.  (*Faretta v. California* (1975) 422 U.S. 806 [45 L. Ed. 2d 562].)  The court warned defendant that he was "looking at 25-to-life" in this case.  Defendant indicated he understood but suggested the prior convictions were "not as severe as they would like to say," in part because he claimed they supported a single prior prison term.  The court noted that defendant's prior offenses might still be separate strikes and reiterated that he could be sentenced to 25 years to life.  The court then noted the sentence could be even longer, explaining: "It looks like maybe 28-years-to-life.  In any case, life would be the maximum term."  Defendant acknowledged that he understood.
>
> The trial court granted defendant's motion for self-representation, and he represented himself at hearings in 2001 and early 2002.  At a hearing in November 2001, defendant briefly commented that he would have no grounds for appeals if certain motions were not made and he were "looking at 58 years[.]"  In February 2002, defendant asked to have counsel appointed, and the court granted his request.
>
> On September 23, 2002, the parties entered a negotiated plea agreement and executed a plea form that was signed and filed with the court.  The plea form provided that defendant was entering a plea of guilty to robbery (count 1) and that count 2 (grand theft) would be dismissed. In the plea form, defendant acknowledged: "I understand that the maximum sentence for the offense(s) to

which I am pleading guilty is/are: 5 yrs. prison." There is no reference in the plea form to the enhancement allegations. However, at the plea canvass, defense counsel explained there would be a court trial on "the special allegations" attached to the robbery count, and defendant subsequently waived his right to a jury trial on the allegations.

In canvassing defendant about the consequences of a conviction for the robbery offense, the court stated he "could be committed to State Prison for five years and ordered to pay two fines totaling $ 20,000, plus penalty assessments." Defendant acknowledged that he understood. He indicated no promises had been made to induce his plea besides what had been discussed in court or in the plea form. After accepting the plea, the court set the trial for the special allegations.

On September 25, 2002, the People presented evidence of defendant's prior convictions. The prosecutor and the trial court both referred to the Three Strikes law, and the prosecutor asked the court to sustain the strike allegations. Defendant was present and did not object at any point or indicate any confusion about the proceedings. The court deferred its ruling on the matter to allow briefing, and it took under submission the question of whether certain evidence was admissible.

Defendant prepared a letter that was received by the trial court on October 17, 2002. Defendant asked the court to consider giving him "the middle term of the base sentence for the crime [he] pled guilty to." In the meantime, a probation report was prepared. The probation officer reported that defendant "said he did not wish to discuss the particulars of the robbery" in part "because the matter of the 'strikes' had not been resolved . . . ."

On October 21, 2002, the People were allowed to reopen the trial of the prior convictions and present additional evidence. The trial court continued to defer a final ruling. At that time, the parties also referred to a motion to withdraw the plea that defendant had previously indicated he intended to file. The motion was filed with the court on October 24, 2002. One of defendant's claims that counsel cited was "that at the time he entered his guilty plea to count one, he believed that the court would find the special allegations not to be true, . . . " Counsel attached a supporting declaration by defendant. Defendant explained, "The plea I signed for stated 211, second degree robbery, 5 years. It did not mention plus special allegations or strikes, only the five years." But defendant also noted that his attorney had told him the district attorney would not agree to a plea to grand theft "since it was believed the court would not allow [the] priors to be used as strikes" and "the district attorney would only agree to a deal of second degree robbery, so that they could convict [him] of more time if the priors were found not to be true." Defendant nevertheless claimed that "fraud" by the district attorney "influenced the defendant by the plea agreement, in stating only five years for pleading guilty to second degree robbery, as stated in the plea agreement the defendant signed." Defendant emphasized the punishment restrictions under section 1192.5 and reiterated, "My plea terms were five years only."

At the hearing on October 24, 2002, defense counsel asked the trial court to rule on the special allegations before resolving the motion to withdraw the plea. The court sustained the strike allegations and then denied the motion. The court

4

1   rejected defendant's claims about promises that were not kept, citing the fact that
2   he had acknowledged there were no promises other than those discussed in court
    or cited in the plea form.  The court further commented that defendant's asserted
3   belief that the strike allegations would not be sustained did not establish good
    cause to withdraw his plea.

4   *Id.* at *2-7.

5                                    ANALYSIS

6   I.  Standards for a Writ of Habeas Corpus

7           Federal habeas corpus relief is not available for any claim decided on the merits in state

8   court proceedings unless the state court's adjudication of the claim:

9           (1) resulted in a decision that was contrary to, or involved an  unreasonable
            application of, clearly established Federal law, as determined by the Supreme
10          Court of the United States; or

11          (2) resulted in a decision that was based on an unreasonable determination of the
            facts in light of the evidence presented in the State court proceeding.
12

13  28 U.S.C. § 2254(d).

14          Under § 2254(d)(1), a state court decision is "contrary to" clearly established United

15  States Supreme Court precedents "if it applies a rule that contradicts the governing law set forth

16  in [Supreme Court] cases, or if it confronts a set of facts that are materially indistinguishable

17  from a decision" of the Supreme Court and nevertheless arrives at a different result.  *Early v.*

18  *Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted).

19          Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

20  grant the writ if the state court identifies the correct governing legal principle from the Supreme

21  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.

22  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A federal habeas court "may not issue the writ

23  simply because that court concludes in its independent judgment that the relevant state-court

24  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

25  application must also be unreasonable."  *Id.* at 411; *see also Lockyer v. Andrade*, 538 U.S. 63, 75

26  (2003).

                                            5

In determining whether the state courts have run afoul of § 2254(d), a federal court looks to the last reasoned state court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  The state court is not required to cite the controlling Supreme Court precedent so long as its decision is not "contrary to" or an "unreasonable application" of that precedent. *Early*, 537 U.S. at 8. Where the state court has denied a petitioner's claims of error but provided no reasoning to support its conclusion, the federal court must independently review the record to determine whether the state court decision was objectively unreasonable. *Himes v. Thompson,* 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  Such "[i]ndependent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

II.  Petitioner's Claims

As mentioned above, petitioner levels four challenges to his sentence – three related challenges to his plea (that it was unknowing, unintelligent, and involuntary, that the state breached the plea agreement, and that the trial court erroneously denied his request to withdraw the plea) and a Sixth Amendment challenge to the judge's factual findings in support of the sentence.  The court will address each argument in turn.

A. *Whether Petitioner's Plea Was Unknowing, Unintelligent, or Involuntary*

Petitioner first contends that his plea was unknowing, unintelligent, and involuntary, because he did not understand that he could be subjected to sentencing under the Three Strikes Law and receive a sentence significantly in excess of the five year maximum stated in the plea agreement.  According to petitioner, he was induced to plead guilty by statements made by the trial court during the plea colloquy and by the plea agreement itself, which led him to believe that he would not receive more than five years in prison.  Petitioner seeks an evidentiary hearing on this issue.

////

1    The parties point to the opinion of the California Court of Appeal on petitioner's direct

2  appeal as the last reasoned state court decision on this issue.  A review of those proceedings

3  reveals, however, that petitioner raised, and the court addressed, only the related issue of

4  whether petitioner was properly advised of the sentencing consequences of his guilty plea under

5  California law.  *Runquist*, 2004 Cal. App. Unpub. LEXIS 4754 at *7-12.  Under California law, a

6  defendant must be advised of certain of his rights for a guilty plea to be valid, to assure that

7  defendants are aware of such rights before pleading guilty.  *Bunnell v. Superior Court*, 531 P.2d

8  1086, 1094 (Cal. 1975).  Petitioner has not raised this state-law argument here, but rather argues

9  that his plea was not knowing, intelligent, and voluntary under the federal Constitution because

10  the plea agreement and statements made by the trial court in the plea colloquy led him to believe

11  he would not be subjected to sentencing under the Three Strikes Law.  Petitioner did not raise

12  this argument until his petition for writ of habeas corpus in the California Court of Appeal, filed

13  on March 25, 2005 and summarily denied on March 30, 2005.  Lodg. Docs. 11, 12.  As no state

14  court has provided a rationale on petitioner's claim that his plea was not knowing, voluntary, and

15  intelligent, the court must review the record independently to determine whether the state courts'

16  denial of this claim was contrary to, or an unreasonable application of, clearly established federal

17  law.

18    The U.S. Supreme Court has clearly established that to satisfy due process guilty pleas

19  must be voluntary, "knowing, [and] intelligent acts done with sufficient awareness of the

20  relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748

21  (1970); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  A plea is voluntary if the

22  defendant enters it with full awareness of the consequences – including the actual value of any

23  commitments made to the defendant by the court, the prosecutor, or the defendant's attorney –

24  and where the plea is not the result of threats, misrepresentations, or improper promises made to

25  the defendant.  *Id.* at 755.  However, "the Constitution, in respect to a defendant's awareness of

26  relevant circumstances, does not require complete knowledge of the relevant circumstances, but

7

permits a court to accept a guilty plea . . . despite various forms of misapprehension under which a defendant might labor," including some degree of misunderstanding as to the likely penalty. *United States v. Ruiz*, 536 U.S. 622, 631 (2002).  To determine whether a plea was entered voluntarily, a court must consider all the relevant surrounding circumstances; for example, the strength of the case against the defendant and whether the state threatened or coerced the defendant.  *Id.* at 749.  A plea is intelligent if entered by a defendant who: (1) has been advised by competent counsel and made aware of the charges against him and (2) is not incompetent or otherwise not in control of his mental faculties.  *Id.* at 756.  The court must determine whether the state appellate court's decision was contrary to, or an unreasonable application of, these principles.

As a threshold matter, petitioner requests an evidentiary hearing on the matter. Evidentiary hearings in federal habeas proceedings are authorized by Rule 8 of the Rules Governing § 2254 Cases under limited circumstances.  Whether such a hearing may be granted depends upon whether the record contains an adequate factual basis on which to determine the claim on which a hearing is sought.  *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). Only if the record does not contain an adequate factual basis must the court continue to analyze whether other factors require an evidentiary hearing.  *Id.*  "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Thus, "a federal court may not grant an evidentiary hearing without first determining whether the state court's decision was an unreasonable determination of the facts."  *Earp v. Ornoski*, 431 F.3d 1158, 1166-67 (9th Cir. 2005).

Here, the record contains an adequate factual basis from which the court may determine whether petitioner's plea was intelligent, knowing, or voluntary.  The record contains the trial court's plea colloquy with petitioner, in which the court: (1) inquired as to what the parties had agreed regarding the special allegations attached to the robbery count; (2) informed petitioner of

his rights to remain silent, have his case tried by a jury, confront and cross-examine witnesses, testify, and have the court compel witnesses to testify; (3) informed petitioner that the maximum sentence he faced for pleading guilty to the robbery charge was five years; (4) inquired whether petitioner had been offered any promises not contained in the plea agreement or had been otherwise coerced to enter the plea; and (5) inquired whether petitioner was under any condition that affected his judgment.  RT 121-24.  The record further discloses the strength of the case against petitioner, RT 9-47, and contains numerous indications of petitioner's awareness of his possible sentence, both before and after he entered the plea agreement.  RT 50-51; CT 505, 507; CT 481.  These items of evidence in the record form an adequate factual basis on which the court may determine whether petitioner's plea was intelligent, knowing, and voluntary, and, accordingly, an evidentiary hearing on this issue is not required.

That same evidence shows that the plea was not constitutionally deficient, and petitioner is thus not entitled to relief on this claim.  The transcript of the preliminary hearing shows that the state had a strong case against petitioner, including DNA evidence linking him to the bank robbery.  RT 9-47.  Petitioner and his counsel acknowledged to the trial court during the plea colloquy that the plea agreement did not encompass the special allegations attached to the robbery count and that, instead, the parties has agreed to a court trial on those allegations.  RT 121-22.  The plea colloquy also contains petitioner's acknowledgments that the plea had not been obtained by any promise not included in the plea agreement (which was silent as to the special allegations attached to the robbery count) or had otherwise been forced to plead guilty and that he was not under any condition affecting his judgment.  RT 123-24.  Petitioner makes no argument that his trial counsel was ineffective.  In addition, the record shows that petitioner knew he was facing a possible 25-to-life sentence under the Three Strikes Law based on the special allegations both before and after he entered the plea agreement.  First, the trial court informed petitioner during the hearing on his request to represent himself that he was "looking at 25-to-life."  RT 50-51.  Petitioner acknowledged that he understood the possibility of a 25-to-life

1   sentence based on his prior convictions.  *Id.*  Moreover, after having entered the plea, petitioner

2   made statements indicating his awareness that the plea did not encompass the special allegations

3   and that he would be subject to Three Strikes sentencing if the court found the special allegations

4   true.  In his pre-sentence report, the probation officer wrote that petitioner had declined to

5   discuss the particulars of the bank robbery with him because "the matter of the 'strikes' has not

6   been resolved."  CT 481.  Petitioner's motion to withdraw his plea stated that petitioner

7   "believed that the court would find the special allegations not to be true."  CT 505.  In the

8   supporting declaration, petitioner stated that "it was believed that the court would not allow my

9   priors to be used as strikes," and that his counsel told him that "the district attorney would only

10  agree to a deal of second degree robbery [rather than grand theft], so that they could convict me

11  of more time if the priors were found not to be true."  CT 507.  These statements show

12  petitioner's awareness that there was a possibility that he could be sentenced under the Three

13  Strikes Law despite the maximum term stated in the plea agreement.

14          Petitioner additionally claims that his plea was not knowing or intelligent because the

15  trial court failed to advise him of all of the elements for second-degree robbery, *see Bradshaw*,

16  545 U.S. at 183, and improperly participated in plea negotiations.  These arguments lack merit.

17  Petitioner fails to elaborate on how the trial court improperly participated in plea negotiations

18  and the record reveals no such improper conduct.  The transcript of the plea colloquy includes

19  the trial court's reading of the indictment to petitioner, which included all of the elements of

20  second-degree robbery under California law.  RT 124.

21          In sum, the record contains a wealth of evidence showing that petitioner was, in fact,

22  aware that the plea agreement did not preclude the special allegations and that he could be

23  subject to an enhanced sentence despite the plea, contrary to petitioner's assertions here.

24  Accordingly, it was not contrary to, nor an unreasonable application of, clearly established

25  federal law for the California courts to deny petitioner's claim that his plea was not knowing,

26  intelligent, and voluntary.

10

1        B.  *Whether the State Breached the Plea Agreement*

2        Petitioner next argues that the state breached the plea agreement by sentencing him to 25-

3   to-life rather than the 5-year maximum sentence listed in the agreement.  Petitioner seeks an

4   evidentiary hearing on this issue as well.  The California Court of Appeal, which provided the

5   last reasoned decision on the issue, held:

6        "[Defendant's] claim as to the asserted breach of the plea agreement is distinct
         from the question whether the trial court properly fulfilled its duty to advise him
7        regarding the direct consequences of his plea.  As . . . explained in *People v.*
         *Walker*, *supra*, 54 Cal.3d 1013, in contrast to a violation of the trial court's
8        advisement duty (which, as we have seen, entitles a defendant to relief only if the
         defendant can demonstrate prejudice), '[a] violation of a plea bargain is not
9        subject to harmless error analysis.  A court may not impose punishment
         significantly greater than that bargained for by finding the defendant would have
10       agreed to the [additional] punishment had it been made a part of the plea offer.
         "Because a court can only speculate why a defendant would negotiate for a
11       particular term of a bargain, implementation should not be contingent on others'
         assessment of the value of the term to defendant."'" (*Moser*, *supra*, 6 Cal.4th at
12       pp. 353-354, original italics.)

13       But "the circumstance that a statutorily mandated consequence of a guilty plea is
         not embodied specifically within the terms of a plea agreement does not signify
14       that imposition of such a consequence constitutes a violation of the agreement."
         (*People v. McClellan* (1993) 6 Cal.4th 367, 381; *cf. Moser*, *supra*, 6 Cal.4th at p.
15       357.)  And here, defendant unequivocally agreed to a trial on the enhancement
         allegations, which carried mandatory sentencing consequences that included a life
16       sentence.  The five-year sentence discussed in the context of the plea bargain
         described the possible sentence for a robbery conviction and obviously was not
17       meant to take into account the enhancements.

18       In so holding, we recognize that the trial court retained some discretion to dismiss
         the enhancements, including the strikes. But the court's authority in this respect is
19       limited (*see People v. Williams* (1998) 17 Cal.4th 148, 161; § 1385, subd. (a)),
         and neither the court nor the parties referred to it in citing the terms of the plea
20       agreement, or to any restriction on the otherwise mandatory sentence
         enhancements.

21

22   *Runquist*, 2004 Cal. App. Unpub. LEXIS 4754 at *10-12.

23       It is clearly-established federal law that, "when a plea rests in any significant degree on a

24   promise or agreement of the prosecutor, so that it can be said to be part of the inducement or

25   consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262

26   (1971).  "[T]he construction and interpretation of state court plea agreements 'and the

11

concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters

of state law.'" *Buckley v. Terhune*, 441 F.3d 688, 694-95 (9th Cir. 2006) (quoting *Ricketts v.*

*Adamson*, 483 U.S. 1, 6 n.3 (1987)).  California plea agreements are interpreted according to

general California contract law principles.  *Id.* at 695 (citing *People v. Shelton*, 125 P.3d 290

(Cal. 2006) and *People v. Toscano*, 20 Cal. Rptr. 3d 923 (Cal. Ct. App. 2004).  The Ninth Circuit

provided an apt description of California contract law in *Buckley*:

> In California, "all contracts, whether public or private, are to be interpreted by the
> same rules . . . ."  CAL. CIV. CODE § 1635; *see also Shelton*, 37 Cal. 4th at
> 766-67; *Toscano*, 124 Cal. App. 4th at 344.  A court must first look to the plain
> meaning of the agreement's language.  CAL. CIV. CODE §§ 1638, 1644.  If the
> language in the contract is ambiguous, "it must be interpreted in the sense in
> which the promisor believed, at the time of making it, that the promisee
> understood it."  CAL. CIV. CODE § 1649.  The inquiry considers not the
> subjective belief of the promisor but, rather, the "objectively reasonable"
> expectation of the promisee.  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254,
> 1265, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992); *Badie v. Bank of Am.*, 67 Cal.
> App. 4th 779, 802 n.9, 79 Cal. Rptr. 2d 273 (1998) ("Although the intent of the
> parties determines the meaning of the contract, the relevant intent is objective –
> that is, the objective intent as evidenced by the words of the instrument, not a
> party's subjective intent." (internal quotation marks and citation omitted)).
> Courts look to the "objective manifestations of the parties' intent . . . ."  *Shelton*,
> 37 Cal. 4th at 767.  If after this second inquiry the ambiguity remains, "the
> language of a contract should be interpreted most strongly against the party who
> caused the uncertainty to exist."  CAL. CIV. CODE § 1654; see also *Toscano*,
> 124 Cal. App. 4th at 345 ("ambiguities [in a plea agreement] are construed in
> favor of the defendant").

*Id.* at 695-96.  This court must therefore determine whether the California Court of Appeal's

analysis of petitioner's claim that the state breached the plea agreement by sentencing him

beyond the 5 years stated in the plea agreement was contrary to, or an unreasonable application

of, these principles.

Petitioner requests an evidentiary hearing on this issue as well.  Again, the court finds

that the record contains an adequate factual record, including the written agreement and the plea

colloquy, from which the court may determine whether the plea agreement was breached.  While

petitioner seeks a hearing to determine what his own reasonable understanding of his maximum

sentence was, the court may not consider such information under California contract law.  Even

1  assuming some ambiguity in the agreement, the court must determine the intent of the parties

2  only by looking to objective manifestations of the parties' intent, such as the terms of the

3  contract itself and the parties' conduct at the colloquy.  *Id.* at 698; *United States v. Bronstein*,

4  623 F.2d 1327, 1329 (9th Cir. 1980) (stating that "[t]he intent of the parties becomes clear upon

5  an examination of the language of the plea agreement and the conduct of the parties" at the plea

6  colloquy).  As California contract law precludes consideration of petitioner's subjective intent,

7  an evidentiary hearing is not required to determine what that intent was.

8          Petitioner argues that the California Court of Appeal failed to apply state contract law to

9  his claim.  Where the state court reviewing a breach-of-plea-agreement claim fails to properly

10  apply California contract law in interpreting the agreement, or fails to apply state contract law at

11  all, its decision is contrary to clearly-established federal law.  *Id.* at 695 & n.5.  The state

12  appellate court did not expressly discuss petitioner's claims in the context of the contract law

13  principles outlined in *Buckley*.  However, even assuming that the state court's analysis was not

14  the product of an implicit state contract law analysis and was therefore contrary to clearly-

15  established federal law, his argument fails.  In such a situation, the court must conduct a *de novo*

16  review of whether the plea agreement was breached under California contract law principles to

17  determine whether the state court's error had a "substantial and injurious effect" on petitioner

18  under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *Buckley*, 441 F.3d at 697.  This court's

19  *de novo* review of that question reveals no prejudice to petitioner for the following reasons.

20          Under California contract law, the court must first determine whether the plain meaning

21  of the plea agreement was ambiguous.  Here, the plea agreement stated, "I understand that the

22  maximum sentence for the offense(s) [211 PC] to which I am pleading guilty is/are: 5 yrs.

23  prison" and contained no mention of the special allegations attached to the Penal Code § 211

24  charge.  CT 449.  There is some support for the argument that the failure to indicate whether or

25  not the plea encompassed the special allegations renders the agreement ambiguous.  *See United*

26  *States v. Blaylock*, 20 F.3d 1458, 1467-68 (9th Cir. 1994) (finding a plea offer ambiguous as to

1 the government's intention to file enhanced penalty charges where the offer specifically

2 mentioned a sentence reduction but did not mention enhanced charges).   However, even with

3 that ambiguity the plea colloquy removes any uncertainty.

4      Assuming an ambiguity, the court looks to the objective manifestations of the parties as

5 to their intent and reasonable expectations.  Cal. Civ. Code § 1649.  This necessarily includes

6 consideration of the contract as a whole and the plea colloquy.  *Buckley*, 441 F.2d at 698.  Here,

7 the contract as a whole might not resolve the ambiguity, but the plea colloquy does.  There, as

8 summarized above, petitioner and his counsel (along with the prosecutor) unequivocally

9 informed the court that the parties had agreed to a court trial on the special allegations attached

10 to the robbery count.  That clear and objective manifestation of the parties' intent shows that the

11 plea agreement did not encompass the special allegations, and that the parties had instead agreed

12 to have those allegations tried.  Accordingly, the prosecution of the special allegations and the

13 trial court's sentencing of petitioner on the special allegations did not breach the agreement.

14      C.  *Whether the Trial Court Erred in Denying Petitioner's Motion to Withdraw the Plea*

15      Petitioner next argues that the trial court erroneously denied his motion to withdraw his

16 plea because the plea was obtained by the false promise that he would receive a maximum of

17 five years in prison.  The court has concluded, *supra*, that neither the prosecutor nor the court

18 promised that petitioner would receive the five-year maximum sentence even if the court found

19 the special allegations true, but rather that petitioner was aware of the potential of a Three

20 Strikes sentence when he entered the plea.  Accordingly, the trial court did not erroneously deny

21 the motion to withdraw the plea and petition is not entitled to relief on this claim.

22      D.  *Whether the Trial Court Deprived Petitioner of His Jury Trial Right in Sentencing*

23      Lastly, petitioner argues that his Sixth Amendment right to trial by jury was violated

24 when the trial court determined that petitioner's prior federal convictions qualified as strikes

25 under the Three Strikes Law.  Petitioner waived his right to trial by jury on the record, however:

26 ////

14

1    THE COURT: Sir, first as to the special allegations that would arise if the
2    Court finds you guilty of Count I, which it will be if you plead guilty to Count I,
     you have the right to have those tried by a jury.

3    Do you understand that?

4    THE DEFENDANT: Yes, I do, Your Honor.

5    THE COURT: It is now the Court's understanding that you intend to have
6    those tried by the Court, which means by a Judge instead.

7    Is that what you intend to do?

8    THE DEFENDANT: Just a moment, Your Honor.

9    (Brief discussion between Ms. Martin-Logan [defense counsel] and the
     Defendant.)

10   THE DEFENDANT: Yes, Your Honor, it is.

11   RT 122.  Petitioner argues that the waiver was invalid because it contravened the California

12   Constitution, article I, § 16, which states, "A jury may be waived in a criminal cause by the

13   consent of both parties expressed in open court by the defendant *and* the defendant's counsel"

14   (emphasis added).  According to defendant, because his counsel did not also expressly state her

15   consent to the waiver, the waiver was not valid.  The court cannot agree.  Even if the California

16   Constitution was violated by defense counsel's silence as to the waiver, a claimed violation of

17   state law is not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68

18   (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations

19   on state-law questions.").  In addition, petitioner has not referred the court to any cases holding

20   that a waiver of the right to jury trial is invalid under the federal Constitution, despite the

21   defendant's own express waiver, simply because defense counsel did not expressly repeat that

22   consent on the record.  The court's own research reveals no such authority.

23   For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

24   application for a writ of habeas corpus be denied.

25   These findings and recommendations are submitted to the United States District Judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  If petitioner files objections to the findings and recommendations, he may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Fed. R. Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

DATED:   February 2, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

16